[No. B014379. Second Dist., Div. Five. Dec. 19, 1985.]

JEANNE PARKER, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Defendant and Respondent;
CITY OF TORRANCE et al., Real Parties in Interest and Respondents.

Counsel

Carl B. Pearlston, Jr., Stewart & O'Kula and Donald L. O'Kula for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Cotkin, Collins, Kolts & Franscell and Juli C. Scott for Real Parties in Interest and Respondents.

Opinion

**ASHBY, Acting P. J.**—Petitioner is the plaintiff in a wrongful death action alleging that the City of Torrance and four of its police officers are responsible for the death of her son, Douglas Parker. In this original proceeding, petitioner contends that the superior court should have granted her motion to amend the complaint to state a cause of action for survival (Prob. Code, § 573). Resolution of this issue requires us to address the retroactivity of *Wilson* v. *Garcia* (1985) 471 U.S. 261 [85 L.Ed.2d 254, 105 S.Ct. 1938], involving the appropriate statute of limitations to be applied in civil rights cases filed pursuant to 42 United States Code section 1983.

Petitioner also takes issue with a portion of the court's order granting in part the motion of defendants/real parties in interest for summary judgment.

Petitioner alleges in her complaint that on the evening of January 3, 1983, four officers of the Torrance Police Department went to her apartment (in which her son also resided), broke down the door, and fired a total of 20 gunshots. Several of these shots struck and injured Douglas Parker.

Douglas had a long history of psychiatric problems and alcohol and drug abuse. According to petitioner, this experience with the police caused Douglas to become severely depressed. On May 7, 1983, Douglas committed suicide, apparently by taking an overdose of Ludiomil, an antidepressant drug.

On January 3, 1985, petitioner and her daughter, Kathy Skibiski (Douglas' sister), filed in propria persona a complaint for damages naming as defendants the City of Torrance, the four police officers involved in the shooting, and 20 Does. The complaint set forth three causes of action: unlawful use of firearms, negligent use of firearms, and negligent employment (alleging that the City of Torrance employed the defendant officers

and "entrusted them with firearms with knowledge that each had a propensity and disposition to use excessive force in performing their duties . . .").
Both plaintiffs sought punitive damages of $1 million, and petitioner sought reimbursement for medical and hospital bills and funeral expenses.

Plaintiffs subsequently retained counsel and filed a first amended complaint adding a cause of action for violation of their civil rights (42 U.S.C. § 1983).

In March 1985, defendants/real parties filed a motion for summary judgment, contending:

(1) Plaintiff Kathy Skibiski, the decedent's sister, had no standing to bring a wrongful death action;

(2) Plaintiffs were not entitled to punitive damages or medical expenses in a wrongful death action;

(3) Plaintiffs had no standing to assert the second, third and fourth causes of action (unlawful and negligent use of firearms and negligent employment); and

(4) The decedent died from causes other than defendants' acts.

While the motion for summary judgment was pending, plaintiffs brought a motion to amend the complaint to assert a survival cause of action (Prob. Code, § 573). Petitioner also filed a probate action and received letters of special administration so that she could assert a survival cause of action on behalf of Douglas' estate.

It was conceded that Kathy Skibiski had no standing to assert a wrongful death cause of action. (Under Code Civ. Proc., § 377, siblings are not considered to be a decedent's heirs unless both parents are deceased.)

The motion for summary judgment was denied on the issue relating to the cause of death, as this raised a triable issue of fact. The motion was also denied as to the contention that petitioner had no standing to bring a wrongful death cause of action for negligent employment.

The two rulings with which petitioner takes issue are the court's orders (1) striking those portions of the first cause of action (violation of civil rights) seeking punitive damages and reimbursement of medical expenses; and (2) denying petitioner's motion to amend the complaint, on the ground that the amendment was barred by the statute of limitations.

1. *Striking claims for punitive damages and medical expenses.* ■ In their motion for summary judgment, real parties contended that petitioner could not recover punitive damages or medical expenses in a wrongful death cause of action. Code of Civil Procedure section 377 provides that the plaintiff in a wrongful death cause of action cannot recover damages which are recoverable under Probate Code section 573, governing survival actions. ■ Section 573 permits recovery of such damages "as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived . . . ."

■ ■■■■ Here, the first cause of action is obviously one for wrongful death, not survival.[1] ■ Petitioner concedes that the court's interpretation would be correct under *state* law, but argues that since the first cause of action is a federal claim for violation of civil rights, elements of wrongful death and survival causes of action may be combined.

Petitioner relies primarily on *Sager* v. *City of Woodland Park* (D.C. Colo. 1982) 543 F.Supp. 282, in which she contends the court "appeared to" suggest that survivors have a separate claim under section 1983. Not only does *Sager* fail to support petitioner's claim, it actually hurts petitioner's case. Although the plaintiffs in that case did combine elements of wrongful death and survival causes of action in one section 1983 claim, the survival cause of action was properly stated because it was brought by the personal representative of the deceased. Here, petitioner was suing on her own behalf.

As to the *wrongful death* portions of the claim set forth in *Sager,* the court declared that the prayer for relief on this claim and the categories of damages requested "must be reduced or eliminated in accordance with the state law damage limitations contained in the Colorado survival and wrongful death statutes." (543 F.Supp. at p. 289, fn. omitted.) In a footnote, the court noted: ". . . The wrongful death statute has been interpreted to permit only recovery for pecuniary loss and not for punitive damages or for mental anguish or 'grief of the living occasioned by the death of their relative, however dear.' [Citation.]" (543 F.Supp. at p. 289, fn. 6.) This would suggest that even though the plaintiffs filed a claim for wrongful death pursuant to a *federal* statute, they can still recover only the damages which the *state* wrongful death statute permits them to recover.

Thus, the court was correct in striking the claims for punitive damages and medical expenses from the first cause of action.

---

[1] Punitive damages may be recovered in survival actions under 42 United States Code section 1983. (*Guyton* v. *Phillips* (N.D. Cal. 1981) 532 F.Supp. 1154.)

2. *Denial of motion to amend.* After commencing a probate proceeding and receiving special letters of administration, petitioner sought to amend her complaint to state a survival cause of action on behalf of Douglas' estate. The court below held that the amendment was barred by the statute of limitations because the amendment could not relate back to the filing of the original complaint.

■ In *Dominguez* v. *City of Alhambra* (1981) 118 Cal.App.3d 237 [173 Cal.Rptr. 345], we held under similar facts that an amendment to plaintiff's complaint was barred by the statute of limitations: "The survival, pursuant to Probate Code section 573, of the cause of action the decedent could have maintained during his lifetime, is wholly distinct from a cause of action by the decedent's heirs for wrongful death pursuant to Code of Civil Procedure section 377. [Citations.] . . . [¶] In these circumstances the proposed action under Probate Code section 573 seeks to enforce an independent right of an independent entity, the estate of the decedent, and it cannot relate back, for purposes of satisfying the statute of limitations, to the action for wrongful death by the heirs. [Citation.]" (118 Cal.App.3d at p. 243.)

Here, the decedent died on May 7, 1983. The court below applied the one-year statute of limitations for personal injury actions (Code Civ. Proc., § 340, subd. (3)). Since the amendment adding a survival cause of action cannot relate back to the date the lawsuit was originally filed, application of the one-year limitations period would bar the amendment.

■ The issue, however, is whether the court correctly applied the one-year limitation period. Petitioner contends that the court should have applied the three-year statute of limitations for an "action upon a liability created by statute" (Code Civ. Proc., § 338, subd. 1).

The federal statute governing civil rights claims (42 U.S.C. § 1983) does not contain a specific statute of limitations. Instead, 42 United States Code section 1988 directs federal courts to select and apply the state limitations statute which governs actions to redress the wrong most closely analogous to that described in the complaint. (See *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)

This resulted in considerable confusion, as each circuit of the federal court of appeals formulated its own method of determining what statute of limitations should apply. The Ninth Circuit applied a general three-year limitations period for section 1983 claims, regardless of the particular facts of the case. (*Smith* v. *Cremins* (9th Cir. 1962) 308 F.2d 187 [98 A.L.R.2d 1154].) In the Third Circuit, the court examined each case individually, " 'on an ad hoc basis, focusing on "the relief sought and the type of injury

alleged." ' " (*Smith* v. *City of Pittsburgh* (3d Cir. 1985) 764 F.2d 188, 192, citing *Fitzgerald* v. *Larson* (3d Cir. 1984) 741 F.2d 32, 35.) The Eleventh Circuit employed a like method, first determining the "essential nature" of the claim and then deciding which statute of limitations should apply. (*Jones* v. *Preuit & Mauldin* (11th Cir. 1985) 763 F.2d 1250.)

To resolve this conflict, the U.S. Supreme Court held in *Wilson* v. *Garcia, supra,* 471 U.S. at p. — [85 L.Ed.2d at p. 257], that the *characterization* of a section 1983 claim for statute of limitations purposes is governed by federal, not state law. The court then characterized all section 1983 actions uniformly as personal injury actions, and applied to all section 1983 actions the state statute of limitations governing personal injury actions. In California, the statute of limitations for personal injury actions is one year.

■ *Wilson* v. *Garcia, supra,* was decided in April 1985, while defendants' motion for summary judgment and petitioner's motion to amend the complaint were pending. The issue here is whether *Wilson* should be applied prospectively only, or applied retroactively to bar petitioner's claim.

The *Wilson* v. *Garcia* case has produced a flurry of opinions from the federal courts addressing the retroactivity issue. (*Smith* v. *City of Pittsburgh, supra,* 764 F.2d 188; *Wycoff* v. *Menke* (8th Cir. 1985) 773 F.2d 983; *Rivera* v. *Green* (9th Cir. 1985) 775 F.2d 1381; *Jackson* v. *City of Bloomfield* (10th Cir. 1984) 731 F.2d 652; *Winston* v. *Sanders* (C.D. Ill. 1985) 610 F.Supp. 176.)

While these courts have differed on whether *Wilson* should be retroactively applied, all have utilized the test set forth in *Chevron Oil Co.* v. *Huson* (1971) 404 U.S. 97 [30 L.Ed.2d 296, 92 S.Ct. 349]. In *Chevron,* the Supreme Court specified three factors to be weighed in determining whether or not a judicial decision should be retroactively applied: (1) whether the decision establishes a new principle of law; (2) whether retroactive application will further or retard the purposes of the rule in question; and (3) whether applying the new decision will produce substantial inequitable results. Applying these factors to the present case, we have determined that *Wilson* should apply prospectively only.

The first and most important prong of the *Chevron* test is whether the new decision established a new principle of law, "either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." (*Chevron Oil Co.* v. *Huson, supra,* 404 U.S. at p. 106 [30 L.Ed.2d at p. 306], citations omitted.) ■ Contrary to the finding of the court below, the statute of limitations in this state for section 1983 actions was not

one year, but three years. In *Smith* v. *Cremins, supra,* 308 F.2d 187, the Ninth Circuit Court of Appeals held that the three-year California statute of limitations for an "action upon a liability created by statute" (Code Civ. Proc., § 338, subd. 1), rather than the one-year period for personal injury actions (Code Civ. Proc., § 340, subd. (3)) applied to actions brought under the federal Civil Rights Act. In *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706 [152 Cal.Rptr. 65], the court held that the three-year period was in fact the controlling statute of limitations for civil rights actions filed in California courts. The *Rossiter* court reasoned that since there was no common law liability for violation of civil rights, no such liability would exist were it not for the federal statute. Thus, a claim for violation of civil rights pursuant to section 1983 was "an action upon a liability created by statute."

The first "prong" of the *Chevron* test—whether *Wilson* established a new principle of law—was the most significant factor addressed by those courts of appeals which have issued decisions on the retroactivity of *Wilson.* In two cases where *Wilson* was retroactively applied, there was no "clear precedent on which litigants might have relied" because there was no definitive rule on which limitations period applied to section 1983 claims. (*Smith* v. *City of Pittsburgh, supra,* 764 F.2d 188; *Wycoff* v. *Menke, supra,* 773 F.2d 983.)

In this case, there was clear precedent on which petitioner could have, and did rely: the limitations period for section 1983 actions was three years.

The second factor considered by the *Chevron* court was whether retroactive application of the new rule would further or retard the purposes of the rule in question. The stated purpose of the *Wilson* rule was to further "federal interests in uniformity, certainty, and the minimization of unnecessary litigation . . . ." (*Wilson* v. *Garcia, supra,* 471 U.S. at p. — [85 L.Ed.2d at p. 266, 105 S.Ct. at p. 1947].) "The choice of the personal injury limitation over other possible choices also minimized the risk that states would provide a discriminatorily short period of limitations or one inadequate to serve the federal interests of § 1983." (*Smith* v. *City of Pittsburgh, supra,* 764 F.2d at p. 196.)

The federal interest in having a uniform limitations period would not be undermined by applying *Wilson* prospectively in this case. Retroactive application, however, would hamper petitioner's ability to pursue her section 1983 claim at the expense of a statute of limitations defense, one which is not favored by the courts. (*Rivera* v. *Green, supra,* 775 F.2d 1381.) The Ninth Circuit Court of Appeals in *Rivera* noted that retroactive application of a statute of limitations is appropriate where the effect is to lengthen the statutory period, but not where the period is shortened. Thus, in *Rivera,*

the court held that *Wilson* should be retroactively applied to give the plaintiff the benefit of Arizona's two-year statute of limitations for personal injury actions, rather than the one-year period previously applicable to civil rights actions. Both *Jackson* v. *City of Bloomfield, supra,* 731 F.2d 952, and *Winston* v. *Sanders, supra,* 610 F.Supp. 176, declined to find retroactive application where the effect would have been to shorten the limitations period and, as a result, preclude the plaintiff's action.

Finally, prospective application of *Wilson* in this case will not produce "substantial inequitable results." Real parties have been on notice of plaintiff's claims since the original action was timely commenced in January 1984. The effect of the proposed amendment would be to change the capacity in which petitioner sets forth her claims, but the nature of the claims themselves would not change. On the other hand, as we stated above, retroactive application of *Wilson* in this case would shorten the limitations period on which petitioner has relied and would bar the survival action altogether. Such a result would be inconsistent with the purpose of section 1983: to provide access to the courts for private citizens to redress "'incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.'" (*Wilson* v. *Garcia, supra,* 471 U.S. at p. — [85 L.Ed.2d at p. 264, 105 S.Ct. at p. 1945].)

Let a peremptory writ of mandate issue directing the respondent court to vacate that portion of its order of May 7, 1985, denying the motion of plaintiff Jeanne Parker to file an amendment to her first amended complaint, and enter a new and different order granting said motion, in that matter entitled Jeanne Parker v. City of Torrance et al., Los Angeles Superior Court No. SWC70959.

Hastings, J., and Eagleson, J., concurred.

The petition of real parties in interest and respondents for review by the Supreme Court was denied March 27, 1986.